[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE APPLICATIONS TO CONFIRM AND TO VACATEARBITRATION AWARD
Facts
On March 7, 1988 the parties entered into a written contract in regard to a project for the development of Middletown Professional Park (Project).
Under that contract plaintiff was the construction manager.
Arbitration is provided for in Article 9 of that contract which reads in pertinent as follows:
ARTICLE 9
ARBITRATION
 9.1 All claims, disputes and other matters in question between the parties to this Agreement arising out of or relating to this Agreement or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. No arbitration arising out of or relating to this Agreement shall include, by consolidation, joinder or in any other manner, any additional person not a party to this Agreement except by written consent containing a specific reference to this Agreement and signed by the Construction Manager, the Owner, and any other person sought to be joined. Any consent to arbitration involving an additional person or persons shall not constitute consent to arbitration of any dispute not CT Page 8592 described therein or with any person not named or described therein. This agreement to arbitrate and any agreement to arbitrate with an additional person or persons duly consented to by the parties to this Agreement shall be specifically enforceable under the prevailing arbitration law.
. . .
 9.3 The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.
A dispute arose under the contract and on August 25, 1993 the parties submitted it for arbitration. Neither the parties nor the arbitrator have set out what they consider to be a definitive submission. The issue "submitted" seems to have been a claim by defendant that plaintiff failed "to pay a balance of $160,076.00 due on construction contract" plus interest at 18%. Hearings were held in December of 1993 and later the parties submitted briefs.
On March 7, 1994 the arbitrator issued his decision and award. That award reads as follows:
"AWARD
The Arbitrator, after hearing and consideration of the entire record presented to him by the parties, awards Associated Construction Company the sum of $98,758.31, plus interest thereon to be computed at the rate of ten percent a year from February 14, 1990, to the date of payment.
The Arbitrator states that he heard the above matter at East Hartford on two days, namely December 15, 1993 and December 29, 1993, and that he spent additionally in the aggregate two days in reviewing transcript, exhibits and documentary evidence and the written memoranda of the parties, and in preparing the foregoing decision and award.
The Arbitrator further represents that he incurred travel expenses of $66.00, telephone expense of $11.87 and copying expenses of $8.40, summarized as follows: CT Page 8593
 Services (four days) $1,500.00 Disbursements 86.27 -------- Total due $1,586.27
The Arbitrator further directs that his compensation and disbursements shall be borne equally by the parties Therefore, Claimant, having previously paid $500.00 on account thereof, shall pay the additional sum of $293.13 to the American Arbitration Association and the Respondent shall pay the sum of $793.13 to the American Arbitration Association for compensation and disbursements still due the Arbitrator.
The Arbitrator further directs that the administrative fees and expenses of the American Arbitration Association totaling $1,705.82 shall be borne equally by the parties. Therefore, Respondent shall pay to the American Arbitration Association the sum of $405.82, being that portion of Respondent's share of administrative fees and expenses previously advanced by Claimant to the American Arbitration Association.
The arbitrator makes the foregoing Award in full and final settlement of any and all claims submitted to him in this arbitration."
Claims
The plaintiff claims the award should be vacated because "the arbitrator has been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown and has exceeded his powers and so imperfectly executed his powers that a mutual, final and definite award upon the subject matter submitted was not made." Plaintiff then goes on to say:
 "a. for the reason that the arbitrator rejected and disregarded the law of Connecticut which is, according to contract, the law applicable to disputes between these parties;
 b. for that [sic] reason that the arbitrator rejected and disregarded the law of Connecticut CT Page 8594 which is, according to contract, the law applicable to disputes between these parties;
 c. improperly and without just cause failed to consider all of the evidence presented to him, and,
 d. failed to recognize that the dispute between these parties has been resolved by settlement in disregard of the law of the State of Connecticut and written agreement between the parties."
 Law
The first obligation of this court is to determine if the award conforms to the submission. American UniversalIns. Co. v. DelGreco, 205 Conn. 178, 186. On its face it does.
I Postponement
Plaintiff's brief never mentions any problem arising from any failure of the arbitrator to grant a postponement nor does it point to any facts to support a claim in regard to such possible failure. The court considers this claim abandoned.
II Interest
The defendant claimed interest in the arbitration. The contract provides the following in regard to interest:
 "15.5 Payments due the Construction Manager and unpaid under this Agreement shall bear interest from the date payment is due at the rate entered below, or in the absence thereof at the legal rate prevailing at the principal place of business of the Construction Manager (here insert any rate of interest agreed upon.) One and one-half (1 1/2%) percent."[1]
It could easily be argued that the annual interest rate called for is 1 1/2%. However, a kindly interpretation of the provisions for annual interest could easily be 1 1/2% per month. Of course, the expressions CT Page 8595 "monthly", "annually", "yearly" or "for 12 months" are not used in the provision.
There is a portion of the provision which states "in the absence thereof, at the legal rate prevailing at the principal place of business of the construction manager." The contract between the parties and the service of this suit allows this court to conclude that the principal place of business of defendant is Connecticut.
In Connecticut "the legal rate prevailing" is an annual rate. Conn. Gen. Stats. §§ 37-1, 2, 3a, 3b, 4, 6, 9(70)(A). As a result the arbitrator could find that both the 1 1/2% interest called for and the "legal rate prevailing" were both referring to an annual rate. Thus the arbitrator might possibly have awarded interest at an annual rate of 1 1/2%. He did not do that but found "that there is an absence of a determinable rate of interest, and therefore . . . interest should attach at the statutory or legal rate of ten percent a year."
In considering an application to vacate in regard to a voluntary arbitration of an unrestricted submission the courts "will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact." American Universal Ins. Co. v. Del Greco, supra 186.
What the arbitrator did was to find that the contract did not provide for any determinable rate of interest. Having done that he determined that defendant should be paid interest in accordance with C.G.S. § 37-3a.[2]
That statute permits such an award in arbitration.
III Settlement
In plaintiff's brief it is claimed that "a settlement agreement was reached between these parties in 1991." The court has read all of the transcripts appended to plaintiff's brief and cannot find that the arbitrator had to find that there was a settlement in 1991.[3]
Although not totally clear it does appear that there was at least one party to the proposed settlement or settlements who was not a party to the arbitration and is CT Page 8596 not a party to this action. The arbitrator could consider that.
The arbitrator considered the plaintiff's claim of settlement but concluded "that [plaintiff's] defense of settlement must fail." This court on the record cannot find a reason to overrule that decision.
IV Failure to Consider all Evidence
This court cannot find on the record before it that the arbitrator did not appropriately consider all the relevant evidence.
V Improper Calculation
Article 17 of the contract between the two parties provides for a payment to defendant based on savings that might be had as calculated on "the final adjusted guaranteed maximum price." The contract tells us what makes up the guaranteed maximum price — sometimes called "sum." It does not tell us what either "final" or "adjusted" means.
The plaintiff claims correctly that the guaranteed maximum price does not include the extra work for tenants. Plaintiff goes on to say that the arbitrator's award, as explained in his decision, gives defendant a fee for savings which include the extra work done for tenants. This court does not find proof of that assertion from which the arbitrator would necessdaily [necessarily] find the amount of the extra work for the tenants.
The "Exhibit D", referred to in the arbitrator's decision, is a letter dated February 14, 1990 from defendant to plaintiff and it states that the final requisition enclosed with the letter "finalized all activity to date and incorporates building and tenant improvement costs into one document."
The contract itself contemplates the defendant's "Basic Service" to be in two phases, the preconstruction phase, Article 1.1; and the construction phase, Article 1.2. After that the contract speaks of "Additional Services" Article 1.3. In pertinent part that Article CT Page 8597 reads as follows:
 1.3 ADDITIONAL SERVICES The following additional services shall be performed upon authorization in writing from the Owner and shall be paid for as provided in this Agreement.
. . .
 1.3.2 Services related to Owner-furnished furniture, furnishings, and equipment which are not a part of the Project.
1.3.3 Services for tenant or rental spaces.
The contract provides for payment by plaintiff for "those additional services. Articles 7.2.1 and 15.3.1.
It is under Article 17, subsection 17.2, of the contract that the defendant is to receive payment for savings. That subsection reads as follows:
 17.2 It is agreed that all savings realized from the final adjusted guaranteed maximum price will be distributed equally between the Construction Manager and the Owner. Both will share in the savings as follows: Fifty percent (50%) of savings to the Owner, and Fifty percent (50% of savings to the Construction Manager.
The scope of the work which is the basis for the guaranteed maximum price is defined in "Attachment A" of the contract. That attachment makes no mention of services for tenant or rental spaces.
When we look at the "Exhibit D" letter, contract subsection 1.3.3 and the scope of work as defined in "Attachment A" we see the expressions "tenant improvement costs", "[s]ervices for tenant or rental spaces" and a list of work that on its face does not mention tenants or rentals. We also have the testimony of one Mark Quattro in Exhibit F attached to plaintiff's brief which uses the expressions "the tenant fit-out work" and "the tenant CT Page 8598 improvement work."
What we do not find from all of this is the amount of "services for tenant or rental spaces", "tenant improvement costs", "tenant fit-out work" or "tenant improvement work." Without some evidence in this regard the court cannot find that the arbitrator's calculations are in error.
"Exhibit D" also sets out the "Total Cost to Owner $2,777,302,00" in one line and "Total Contract to Date $2,903,313.72" in another line. There is no explanation of the difference in these two numbers. The total savings is the difference between those two numbers. The arbitrator in his "Decision at page 4 discusses both the "total cost to the owner" and the "total contract to date" numbers to arrive at the savings.
It is true that the arbitrator never discussed in his "Decision and Award" the question of tenant work but the plaintiff's brief of May 3, 1994 with its 5 attachments never sets out what proof was given to the arbitrator of work done for tenants, whether called "tenant improvements", "services for tenants", or "tenant fit-out work." No amounts were mentioned. No proof was pointed to as to what part, if any, of the "Total Contract to Date $2,903,313.72" should have been deducted as tenant work.
What we do not hear from all of this is the amount of "services for tenant or rental spaces", "tenant improvement costs" "tenant fit-out work" or "tenant improvement work." Without some evidence in this regard the court cannot find that the arbitrator's calculations are in error. "Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed upon the facts or the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence, nor where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved." Waterbury v. WaterburyPolice Union, 176 Conn. 401, 404; Caldor, Inc. v. Thornton,191 Conn. 336.
Subsection 9.3 of Article 9 of the contract specifically provides that the award "shall be final, and CT Page 8599 judgment may be entered upon it in accordance with applicable law." That is precisely the language the court relied on in Meyers v. Lakeridge Development Co., 173 Conn. 133,134-135, when it ruled that courts will not review evidence considered by arbitrators or where the submission is unrestricted review the decision of legal questions. id 135.
It is true that even an award based on an unrestricted submission may be set aside if the award (1) rules on the constitutionality of a statute; (2) violates clear public policy, C.G.S. § 52-418, or (3) contravenes a proscription in C.G.S. § 52-418, Garrity v. McCoskey, 223 Conn. 1, 6, but not for "manifest disregard of the law" id 6, except in very narrow circumstances where an arbitrator has shown an "extraordinary lack of fidelity to established legal principles." id 10.[4] The court can find nothing approaching proof of any lack of fidelity by the arbitrator.
Application to confirm is granted.
Application to vacate is denied.
N. O'Neill, J.